Slip Op. 18-72

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JUANCHENG KANGTAI CHEMICAL CO., LTD, NAC GROUP LIMITED,<br><br>    *Plaintiffs*,<br><br>v.<br><br>UNITED STATES,<br><br>    *Defendant*. | Before: Richard W. Goldberg, Senior Judge<br>Court No. 17-00257 |

## OPINION AND ORDER

[The court grants Defendant's motion to dismiss Plaintiffs' complaint.]

Dated: June 19, 2018

    *Gregory S. Menegaz*, *Alexandra H. Salzman*, *J. Kevin Horgan*, and *John J. Kenkel*, deKieffer & Horgan, PLLC, of Washington, D.C., for plaintiff.

    *Sonia M. Orfield*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Catherine D. Miller*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

    Plaintiffs Juancheng Kangtai Chemical Co. ("Kangtai") and NAC Group Limited ("NAC") (collectively referred to as "Kangtai"), purport to challenge the administration and enforcement by Customs and Border Protection ("CBP") of the final results issued by the U.S. Department of Commerce ("Commerce" or "the Department") in an antidumping duty investigation to which Kangtai is a party. Compl., ECF No. 2 (Oct. 26, 2017); *see also* Pls.' Resp. in Opp'n to Mot. to Dismiss 10, ECF No. 19 (Apr. 16, 2018) (citations omitted) ("Pls.' Resp."). The Government moves to dismiss Kangtai's complaint, invoking U.S. Court of International Trade Rules 12(b)(1) and 12(b)(6) to contest the court's subject matter jurisdiction

and, in the alternative, contend that even if the court does have jurisdiction, the complaint should be dismissed for failure to state a claim. Def.'s Mot. to Dismiss, ECF No. 13 (Feb. 16, 2018). For the reasons stated below, the court grants the Government's motion to dismiss.

## BACKGROUND

For several years, Commerce has maintained administrative reviews of the antidumping order for chlorinated isocyanurates from the People's Republic of China ("PRC"), under which Kangtai is a covered entity. On July 31, 2014, the Department initiated the ninth administrative review ("AR 9") for the period of review spanning June 1, 2013 to May 31, 2014 ("POR 9"). *Antidumping and Countervailing Duty Administrative Reviews*, 79 Fed. Reg. 44,390 (Dep't Commerce July 31, 2014) (initiation). On August 3, 2015, Commerce initiated the tenth administrative review ("AR 10") covering the period of review from June 1, 2014 through May 31, 2015 ("POR 10"). *Antidumping and Countervailing Duty Administrative Reviews*, 80 Fed. Reg. 45,947 (Dep't Commerce Aug. 3, 2015) (initiation).

As part of its review, Commerce issued a questionnaire to Kangtai during AR 9 requesting that Kangtai "prepare a separate computer data file containing each sale made during the POR" and "[r]eport each U.S. sale of merchandise entered for consumption during the POR." Public App. to Pl.'s Resp., ECF No. 21 Tab 2, Kangtai Section C Resp. 1 (Dec. 15, 2014). Kangtai's response attached an exhibit identifying sales and the corresponding entry dates for those sales. *See id.* ex. C-1. The Department issued this same request to Kangtai during AR 10. *See Heze Huayi Chem. Co. and Juancheng Kangtai Chem. Co. v. United States*, Ct. No. 17-00032 ("*Heze Huayi Chem. Co.*"), J.A. ECF No. 35, Kangtai Section C & D Resp. 1, P.D. 35 (Nov. 23, 2015). Similarly, Kantai's AR 10 response reported certain sales and entries, but did not report those entries it had already reported in AR 9.

For POR 9, Kangtai was assessed a weighted average dumping margin of zero because Commerce found there to be no countervailable export subsidies. *Chlorinated Isocyanurates from the People's Republic of China*, 81 Fed. Reg. 1,167, 1,168 (Dep't Commerce Jan. 11, 2016) (final results) ("AR 9 Final Results"). As to liquidation, Commerce stated:

> The Department will determine, and U.S. Customs and Border Protection (CBP) shall assess, antidumping duties on all appropriate entries covered by this review. The Department intends to issue assessment instructions to CBP 15 days after the publication date of these final results of this review. . . . For each individually examined respondent whose weighted-average dumping margin is above de minimis (i.e., 0.50 percent), the Department will calculate importer-specific assessment rates on the basis of the ratio of the total amount of dumping calculated for the importer's examined sales and the total entered value of sales. We will instruct CBP to assess antidumping duties on all appropriate entries covered by this review when the importer-specific assessment rate is above de minimis.

*Id.* For POR 10, Kangtai was assessed a weighted average dumping margin of 35.05%. *Chlorinated Isocyanurates from the People's Republic of China*, 82 Fed. Reg. 4,852, 4,852 (Dep't Commerce Jan. 17, 2017) (final results). In its preliminary results, Commerce indicated that it would instruct CBP "to assess duties on all appropriate entries of subject merchandise during the POR," *Chlorinated Isocyanurates from the People's Republic of China*, 81 Fed. Reg. 45,128, 45,130 (Dep't Commerce July 12, 2016) (prelim. results) and accompanying Decision Mem., and it was Kangtai's failure to report certain entries *sold* during POR 9 but *entered* in POR 10 led to the imposition of the separate rate for these shipments. *See also* Def.'s Reply to Pls.' Resp. 15–19, ECF No. 25 (May 21, 2018) (discussing Commerce's practice of assessing duties based on the date of entry).

The first liquidation instructions at issue here were submitted to CBP on January 28, 2016. In those instructions, Commerce ordered that all shipments imported or sold to NAC and entered during POR 9 were to be assessed a rate of $0 per metric ton. Def.'s Confidential App., ECF No. 16, Liquidation Instrs. from Commerce to Customs, P.R. 2 (Jan. 28, 2016). "For all

other shipments . . . entered" during the same period, Commerce directed CBP to impose the PRC rate of 285.63%, *id.*, the rate assigned to all other Chinese manufacturers not subject to a separate rate. The next set of instructions, issued February 2, 2017, followed a similar structure: setting certain rates for entries shipped to specific purchasers during POR 10 and the PRC rate for all others. Def.'s Confidential App., ECF No. 16, Liquidation Instrs. from Commerce to Customs, P.R. 4 (Feb. 2, 2017). Following these instructions, CBP liquidated eleven of the eighteen entries at issue. On March 6, 2017, as part of a separate lawsuit challenging the results of AR 10, Kangtai obtained an injunction preventing CBP from liquidating the remaining AR 10 entries. *See Heze Huayi Chem. Co.*, Order Granting Prelim. Inj., ECF No. 17 (Mar. 6, 2017). Thereafter, Commerce instructed CBP to suspend the liquidation of all other entries. Def.'s Confidential App., ECF No. 16, Liquidation Instrs. from Commerce to Customs, P.R. 5 (Mar. 9, 2017). As a result, seven entries remain unliquidated.

      Kangtai filed the instant complaint, alleging four separate counts. Count I alleges that Commerce "acted contrary to law when it assessed individual sales an [antidumping] rate that was higher than the rate calculated upon individual review of the sales in the legal forum appropriate for such calculation, i.e., AR 9." Compl. ¶ 22, ECF No. 2 (Oct. 26, 2017). Kangtai also complains that "[t]he Department's apparent decision to treat the sales as if they were made by the PRC Entity is unsupported by substantial evidence as it had clear evidence that those sales were made by Kangtai" in Count II. *Id.* ¶ 24. Next, Count III sets forth the allegation that "[t]he Department's apparent decision that the NAC entries were not reviewed merely because they entered in the POR subsequent to the AR in which they were reviewed was unsupported by substantial evidence as well as arbitrary and capricious." *Id.* ¶ 26. Last, Count IV challenges CBP's application of its 15-day liquidation policy. *Id.* ¶ 28.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As part of its Rule 12 inquiry, the court is to undertake an examination of the "true nature" of the action in an effort to uncover whether the facts pled properly constitute a claim pursuant to Kangtai's proffered jurisdictional provision.  *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  And Kangtai bears the burden of establishing jurisdiction.  *Id.*

## DISCUSSION

At issue in this case "are a total of thirty-four sales with legal 'date of sale' between June 1, 2013 and May 31, 2014, that were fully and accurately reported in AR 9 and which were included in the antidumping calculation for that review.  Among those thirty-four sales, eighteen entered in the United States after June 1, 2014," during AR 10.  Pls.' Resp. at 9.

Commerce contests the court's jurisdiction and argues that Kangtai's complaint should be dismissed.  As to Counts I–III, Commerce contends that "[b]ecause Kangtai has challenged the assessment rates established by [AR 10] pursuant to 28 U.S.C. § 1581(c), [] it could and should have sought relief pursuant to section 1581(c) . . . ."  Def.'s Mot. to Dismiss 2, ECF No. 13 (Feb. 16, 2018).  In support of this argument, the Government posits that "Kangtai attempts to rely on section 1581(i) instead because it failed to request an injunction covering its affected entries before 11 of its 18 entries subject to [AR 10] were liquidated."  *Id.* at 6.  Count IV, on the other hand, ought to be dismissed, in the Government's view, because Kangtai could have timely obtained an injunction as part of its Kangtai's section 1581(c) case, *Heze Huayi Chem. Co.*, thereby suspending liquidation of the contested entries.  *See id.* at 2.

**I. Counts I–III**

In its complaint, Kangtai asserts three counts—Counts I–III—related to what it describes as "the Department['s] unlawful[] instruct[ion to] CBP to liquidate entries that should have been covered in AR 9 at a punitive rate assigned to entries made in AR 10." *See* Pls.' Resp. at 10. Kangtai asserts that these claims are properly brought under 28 U.S.C. § 1581(i) because they seek to challenge CBP's "administration and enforcement" of Commerce's antidumping duty administrative review, a claim rightfully brought under section 1581(i). *See id.* at 11; *see also Consolidated Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003). Yet, for the reasons outlined below, it is clear that the true nature of Kangtai's complaint aims to challenge Commerce's evaluation of sales in AR 9 and entries in AR 10, a claim properly arising out of section 1581(c). As a result, the court lacks jurisdiction under section 1581(i) and Counts I–III are dismissed.

*A. Jurisdiction Exists Under Section 1581(c)*

The court is called upon to determine whether it has jurisdiction pursuant to 28 U.S.C. § 1581(i). Jurisdiction will arise under section 1581(i) when there exists a:

> [C]ivil action commenced against the United States, its agencies, or its officers that arises out of any law of the United States providing for —
> (1) revenue from imports or tonnage;
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

In this instance, Kangtai asserts jurisdiction under 28 U.S.C. § 1581(i)(2) and (4). Compl. ¶ 4, ECF No. 2 (Oct. 26, 2017).

In order to determine if jurisdiction arises under section 1581(i), the court assesses whether another "subsection of [section 1581] 'is or could have been available'" and whether that other subsection would "provide[] no more than a manifestly inadequate remedy." *Consolidated Bearings Co.*, 348 F.3d at 1002. In so doing, the court is not necessarily bound to accept a plaintiff's characterization of its claims. *See Norsk Hydro Can., Inc.*, 472 F.3d at 1355.

In general, "[a] challenge to liquidation instructions contends that the instructions themselves do not accurately reflect the results of the underlying administrative proceeding." *Corus Staal BV v. United States*, 31 CIT 826, 835, 493 F. Supp. 2d 1276, 1285 (2007). Here, Kangtai's challenge is that the *sales* made during POR 9—and considered in AR 9—and then *entered* during POR 10, should have been assigned the AR 9 rate but were improperly liquidated at the AR 10 rate. *See* Pls.' Resp. at 9. But those eighteen *entries* went unreported in AR 10, even though they were entered during POR 10. *See* Pls.' Resp. at 3, 11 (stating that the entries at issue "absolutely were reported in AR 9" but "not reported as invoiced sales in AR 10."). This despite the fact that Kangtai was directed to report its AR 10 entries and, by its own admission, failed to do so.

This appeal arises not from the erroneous "administration and enforcement" of Commerce's antidumping duty determinations but rather from an allegation that Commerce imposed a liquidation rate that improperly considered already reported sales and entries. Such an action is properly brought under section 1581(c).

Commerce's regulations—namely 19 C.F.R. § 351.213(e)(1)(i)—grant the Department "the discretion to choose entries, exports, or sales in determining whether sales activity occurred during the POR." *Watanabe Group v. United States*, 34 CIT 1545, 1548, 2010 WL 5371606, at *2 (2010). Depending on the circumstances, Commerce may have certain justifications for using

either sales or entries in its calculations. *See Helmerich & Payne, Inc. v. United States*, 22 CIT 928, 934, 24 F. Supp. 2d 304, 310 (1998); *see also Corus Staal BV v. United States*, 29 CIT 777, 791, 387 F. Supp. 2d 1291, 1304 (2005) (upholding "Commerce's use of the date of entry to select [] pre-importation EP sales, and the date of sale to select [] CEP sales" within the same POR as reasonable). Due to the silence in the statute as to the use of either sales or entries, the promulgation of Commerce's regulations, and the reasonableness of the Department's interpretation, the court defers to Commerce's reasonable consideration of either sales or entries in a given POR. *See Helmerich & Payne, Inc.*, 22 CIT at 934, 24 F. Supp. 2d at 310.

Collectively, *Watanabe Group*, *Corus Staal BV*, and *Helmerich & Payne, Inc.* stand for the proposition that Commerce has the discretion to choose between sales or entries made during the POR when calculating antidumping duties. Additionally, each case invoked the court's section 1581(c) jurisdiction, the proper one for evaluating such claims. In other words, Commerce's decisions pursuant to 19 C.F.R. § 351.213(e)(1)(i) are made in the context of the Department's duty to make antidumping determinations, 19 U.S.C. § 1516a, not the "administration and enforcement" thereof, 28 U.S.C. § 1581(i).

At the end of the day, Kangtai cannot make out a section 1581(i) claim as the essence of its challenge remains directed at Commerce's use of sales and entries in its antidumping duty calculations. The Department requested both sales and entries during AR 10. When Kangtai failed to report its entries—choosing instead to rest on its prior reporting in AR 9 of the sales of those entries—Commerce determined that only the entries identified in AR 10 would be subject to the lower rate. Accordingly, those entries that remained unidentified were assessed the higher PRC rate. The propriety of such a decision may be challenged, but under section 1581(c).

### B. A Remedy Under Section 1581(c) Is Not Manifestly Inadequate

Because the court finds that Kangtai could have brought suit under section 1581(c), Kangtai's claim of jurisdiction under section 1581(i) can only survive if the section 1581(c) remedy would have been "manifestly inadequate." Because that remedial path was available to—but declined to be taken by—Kangtai, jurisdiction under section 1581(i) is defeated.

The party seeking to establish jurisdiction has the burden of showing that relief under a different subsection of section 1581 would be manifestly inadequate. *See Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987). Where, as here, an exporter participates in the administrative review, "[t]o be manifestly inadequate, the protest must be an exercise in futility—i.e., incapable of producing any result." *Hutchinson Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1362 (Fed. Cir. 2016) (internal quotation marks omitted).

Kangtai has failed to demonstrate that a 1581(c) claim would be an "exercise in futility." Kangtai claims that it "dutifully reported its sales" and "[t]here was nothing to appeal" as it had no indication "that the Department's plan was to disregard its specific review of a subset of reported sales and assign an arbitrary antidumping margin to them, unmoored from *any* specific review of those sales." Pls.' Resp. at 11. Kangtai's naked assertion that it had no means by which to comprehend that Commerce would calculate the rate based on entries is a false one. Before Kangtai filed its complaint, it was certainly on notice that CBP would "assess[] antidumping duties on all appropriate *entries* covered by [the] review." AR 9 Final Results, 81 Fed. Reg. at 1,168 (emphasis added). Thus, a remedy under section 1581(c) was available in the form of a complaint challenging the results of AR 9 and any resulting remedy could have addressed Commerce's consideration of sales/entries. Kangtai's failure to file such a complaint does not grant it an opportunity to pursue its section 1581(c) claim under section 1581(i).

## II. Count IV

Kangtai's final count, that CBP's 15-day policy is unlawful, stands on somewhat different footing. Whereas Kangtai's other arguments are properly grounded in section 1581(c), a challenge to the 15-day policy is commonly brought under section 1581(i). *See, e.g.*, *Jinan Farmlady Trading Co. v. United States*, 41 CIT __, __, 228 F. Supp. 3d 1351, 1357 (2017). Nevertheless, Kangtai has not articulated an injury that has resulted from CBP's 15-day policy and, as a result, Count IV is also dismissed.

When a plaintiff files an action, it must establish not only that it has suffered injury in fact or the threat thereof, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), but also that the facts asserted give rise to an entitlement to relief. *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (citing *Twombly*, 550 U.S. at 557). This court has stated that the 15-day policy "causes recurring injury in fact by repeatedly forcing plaintiffs to file the summons, complaint, and motion for a preliminary injunction within fifteen days of publication of the Final Results." *Jinan Farmlady Trading Co.*, 41 CIT at __, 228 F. Supp. 3d at 1357. Although a plaintiff can immunize itself from the effects of the 15-day policy by obtaining an injunction, that plaintiff may still be able plead an injury because the policy is capable of repetition yet evading judicial review. *See NTN Bearing Corp. of Am. v. United States*, 39 CIT __, __, 46 F. Supp. 3d 1375, 1387–88 (2015). But where a plaintiff cannot make out a claim that alleges such an injury, its challenge to CBP's 15-day policy shall not be maintained.

Because Kangtai cannot assert an injury, it has neither standing to bring its claim nor has it met the pleading requirements of Rule 12(b)(6). Simply put, the 15-day policy caused no injury in this instance and the court possesses no remedial powers to rectify the alleged impropriety of the policy as applied to Kangtai.

First, Kangtai cannot even assert that the 15-day policy caused an injury in compelling Kangtai to file this action in a rushed manner.  Rather, Kangtai obtained its liquidation injunction as part of its separate section 1581(c) case and filed the instant action more than ten months after Commerce issued the Final Results.  As a result, the injury previously recognized by this court in *Jinan Farmlady Trading Co.*, 41 CIT at __, 228 F. Supp. 3d at 1357, is not present here.

Moreover, this is not a case where "[i]t is the policy itself and the agency's intent . . . to follow that policy that [has] caused plaintiffs uncertainty as to how soon their entries would liquidate . . . ."  *See SKF USA Inc. v. United States*, 33 CIT 370, 385, 611 F. Supp. 2d 1351, 1364 (2009).  Rather, the true nature of the injury alleged arises from Commerce's assessment that some of Kangtai's entries should be liquidated at the PRC rate based on Kangtai's failure to report those entries in AR 10.[1]  Kangtai alleges not that the 15-day policy led to unlawful liquidation; rather, its challenge remains directed at the rate Commerce assigned certain entries based on the Department's distinction between sales and entries.  Thus, the 15-day policy cannot be said to have imposed an injury on Kangtai.

Consequently, Count IV of Kangtai's complaint does not allege any injury whatsoever and is therefore dismissed.

---

[1] And unlike cases in which a party seeks to challenge a determination and claims that the 15-day policy unfairly rushes this challenge, Kangtai itself claims that it was only put on notice of the alleged issue by the act of liquidation itself.  Whether subject merchandise was set to be liquidated on day 15 or day 115, Kangtai would presumably be making the same challenge.  Therefore, the 15-day policy did not cause Kangtai any injury here.

## **CONCLUSION AND ORDER**

Accordingly, for the reasons stated above, the Government's motion to dismiss all counts in Kangtai's complaint under Rules 12(b)(1) and 12(b)(6) is granted.

It is hereby:

**ORDERED** that the Government's motion to dismiss is granted; it is further

**ORDERED** that final judgment is entered for Defendant.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: June 19, 2018
New York, New York